1   FRANK N. DARRAS #128904
    SHERNOFF BIDART & DARRAS, LLP
2   3257 East Guasti Road, Suite 300
    Ontario, CA  91761
3
    Telephone:    (909) 390-3770
4   Facsimile:    (909) 974-2121                    FEB 2 5 2008
    Email: fdarras@sbd-law.com
5                                              RICHARD W. WIEKING
                                                CLERK, U.S. DISTRICT COURT
6   Attorneys for Plaintiff                   NORTHERN DISTRICT OF CALIFORNIA

7

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA          **MMC**

10
    FIDELIA SUAREZ,                       CASE NO:
11
            Plaintiff,        **CV**   **08**      **1102**
12
13  vs.                                  COMPLAINT FOR BENEFITS UNDER
                                         A GROUP DISABILITY EMPLOYEE
14  CANADA LIFE ASSURANCE                BENEFIT PLAN
    COMPANY; TOWNSEND AND
15  TOWNSEND AND CREW LLP GROUP
    LONG TERM DISABILITY PLAN,
16
17          Defendants.

18

19          Plaintiff alleges as follows:

20          1.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337

21  and 29 U.S.C.§ 1132(a), (e), (f) and (g), of the Employee Retirement Income Security

22  Act of 1974, 29 U.S.C. § 1101, *et seq*. (hereafter "ERISA") as it involves a claim by

23  Plaintiff for Disability benefits under an employee benefit plan regulated and governed

24  under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C.

25  § 1331 as this action involves a federal question.

26          2.      The events or omissions giving rise to Plaintiff's claim occurred in this

27  judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2), and the

28  ends of justice so require.

<div style="writing-mode: vertical">SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935</div>

- 1 -



3.    The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

4.    Plaintiff is informed and believes and thereon alleges that Defendant, TOWNSEND AND TOWNSEND AND CREW LLP GROUP LONG TERM DISABILITY PLAN, is an employee welfare benefit plan established and maintained by Townsend and Townsend and Crew LLP, a law firm, (which, Plaintiff alleges, does business in the State of California), to provide its employees with income protection in the event of a disability, and, is the Plan Administrator.

5.    Plaintiff alleges upon information and belief that Defendant, CANADA LIFE ASSURANCE COMPANY ("CANADA LIFE"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of Canada; authorized to transact and transacting the business of insurance in this state; and, the insurer and Claims Administrator for the Plan.

6.    At all relevant times Plaintiff was, a resident and citizen of the State of California, an employee of Townsend and Townsend and Crew LLP and a participant in the Plan.

7.    CANADA LIFE issued Group Long Term Disability Income Policy number 38504 to the Townsend law firm to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff[1]. Therefore, CANADA LIFE suffers from a structural conflict as it funds the plan and decides whether the claimants will receive benefits under the Plan[2]. A copy of the Certificate of Insurance issued pursuant to the

---

[1] Although CANADA LIFE issued the subject Policy, based upon information and belief, Plaintiff alleges that Plaintiff's claim was administered by CANADA LIFE's third party administrator, Jefferson Pilot Financial Insurance Company. Both CANADA LIFE and its third party administrator will be referred to as "CANADA LIFE" in this complaint, unless otherwise designated.

[2] "While we nominally review for abuse of discretion, the degree of deference we accord to a claims administrator's decision can vary significantly. In *Bruch*, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of discretion.'" 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). CANADA LIFE labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9171 TEL 909 621 4935

1    Policy is attached hereto as Exhibit "A."

2        8.    The Plan provides for disability benefits as follows:

| Term | Provision | |
|---|---|---|
| **Elimination Period** | 90 days | |
| **Benefit Percentage** | 67% | |
| **Maximum Benefit** | $12,000 | |
| **Minimum Benefit** | At no time will Your benefit be less than $100 per month unless otherwise provided under the terms and conditions of this policy. | |
| **Maximum Benefit Period** | **Age At Date Disability Commences** | **Maximum Benefit Period** |
| | Under 60 | To age 65 (a minimum of 60 Monthly Income Benefit payments will be made. |
| **Disability** | Disability means You have a Total Disability or a Residual Disability as defined in this Policy. | |
| **Totally Disabled** | Totally Disabled and Total Disability mean during the Elimination Period and thereafter because of an Injury or Sickness You meet all of the following: (a) You are unable to do the Material and Substantial Duties of Your Own Occupation; and (b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; and (c) Your Work Earnings are less than 20% of Your Indexed Pre-Disability Monthly Earnings. | |
| **Residually Disabled** | Residually Disabled and Residual Disability mean during the | |

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

28    incentive to deny claims." "In *Abatie*, we explained that a reviewing court must always consider the 'inherent conflict that exists when a plan administrator both administers the plan and funds it.'" *Saffon v. Wells Fargo & Company Long Term Plan* (2008 WL 80704 (9th Cir. (Cal.) Jan. 9, 2008)

| Term | Provision |
|------|-----------|
|  | Elimination Period and thereafter because of an Injury or Sickness, You meet all of the following: (a) You are unable to do the Material and Substantial Duties of Your Own Occupation; and (b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; and (c) Your Work Earnings are between 20% and 80% of Your Indexed Pre-Disability Monthly Earnings. |
| Material and Substantial Duties | Material and Substantial Duties means duties that: a) are normally required for the performance of Your own or any occupation; and b) cannot be reasonably omitted or modified. |

9.    Prior to her disability on or about April 3, 2004, MS. SUAREZ, who was forty-four (44) years old, worked as a Legal Secretary for the law firm of Townsend and Townsend and Crew LLP. She was a litigation secretary and was responsible for the work load of not just one, but two attorneys, whom she assisted in preparing and filing legal briefs, drafting correspondence, client contact, phone calls and calendaring. Her occupation also required heavy computer use, superior cognitive skills, attention to detail and knowledge of software programs.

10.    MS. SUAREZ subsequently submitted a claim to CANADA LIFE for disability benefits under the terms of the Plan originally due to arthritis, right hand and low back pain.

11.    On or about September 29, 2004, CANADA LIFE wrote to MS. SUAREZ and stated:

- "...the review of your application for Long Term Disability benefits is complete and approval has been granted."

1          • "This policy does have a 90 day elimination period during which no

2             benefits are payable."

3          • "After satisfaction of this elimination period, benefits for your claim

4             would begin on 7/2/2004."

5          • "Your first benefit payment will cover the period of disability from

6             7/2/2004 to 9/2/04."

7      12.    CANADA LIFE continued to pay MS. SUAREZ disability benefits until on

8  or about March 30, 2006, almost two (2) years, when it unreasonably, arbitrarily and

9  capriciously denied MS. SUAREZ any further benefits beyond April 1, 2006.

10     13.    MS. SUAREZ appealed that denial, however, on or about November 30,

11  2006, CANADA LIFE upheld its original unreasonable, arbitrary and capricious denial of

12  long term disability benefits, and advised MS. SUAREZ: "If you disagree with this

13  decision you may pursue your second level of appeal..."

14     14.    On or about March 13, 2007, MS. SUAREZ again appealed CANADA

15  LIFE's denial in a very exhaustive and comprehensive thirty-one (31) page appeal, with

16  multiple attachments, that set forth more than enough medical and vocational evidence

17  of disability from 2004 to the present. According to MS. SUAREZ' appeal:

18          • "Ms. Suarez was 44 years old when she became disabled on April 3,

19             2004, due to arthritis with swelling and pain of her right hand and low

20             back pain."

21          ▪ "Ms. Suarez was awarded Social Security Administration Disability

22             benefits on April 18, 2005 and was found disabled...on April 2,

23             2004, with monthly benefits beginning October 2004[3]."

24          ▪ "A complete physical examination was performed on September 7,

25

26

27  [3] According to the Social Security definition of disability, which is more stringent than the subject Plan's Disability definition: "A person is disabled, and thereby eligible for Social Security disability insurance benefits and Supplemental Security Income (SSI), "only if his physical or mental impairment or

28  impairments are of such severity that *he is not only unable to do his previous work but cannot*, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy.*" 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B) (emphasis added).

SHERNOFF BIDART DARRAS<br>LAWYERS FOR INSURANCE POLICYHOLDERS<br>600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

2005, by a physician at Walnut Creek Urgent Care who diagnosed her with fibromyalgia, GERD (Gastro-esophageal Reflux Disease), LBP (Low back pain) due to herniated discs and Insomnia."

- "...on November 15, 2005...the doctor documented that her Fibromyalgia is still very bad with multiple aches and pains and fatigue."

- "On November 22, 2005, H. Vic Singh, MD...indicated...that Ms. Suarez is so incapacitated that even a sedentary activity is inappropriate for her."

- "He indicated that he recently performed a full history and physical on this patient and based upon this information he feels that she can no longer work in any capacity due to the overwhelming effects of Fibromyalgia on her body."

- "She has **extreme fatigue**, pain in multiple areas of her body which affects activities of daily living to such a degree that even these are difficult for her to perform."

- "He opined that 'Based upon this circumstance, I feel even light sedentary work would be impossible for her.'"

- "She was seen again at Walnut Creek Urgent Care on November 29, 2005 complaining of **severe fatigue**, multiple aches and pains in the lower back, both arms and calves and cervical spine areas with occasional pain in both wrists."

- "The doctor documented that the Provigil makes her agitated and nervous even with half of a dose and...diagnosed her with **incapacitating fibromyalgia**."

- "On May 6, 2006, Dr. H. Vic Singh wrote...'I had the opportunity to re-examine Ms. Suarez on March 31, 2006 and wish to update you with her condition. She **remains totally disabled** due to moderate

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

to **severe pain** in multiple muscle groups associated with severe fatigue due to Fibromyalgia...I feel that the patient is **not able to work in any capacity** and therefore would ask you to approve total permanent disability...'"

- "On September 9, 2006, an Independent Medical Examination was performed by Umesh K. Sab, MD who documented that...'The diagnosis of **osteoarthritis** and **fibromyalgia** was **confirmed** by the medical records and physical exam...The claimant...has **multiple trigger points** in exam...she **may not drive** because of her...pain...it is not this examiner's opinion that the claimant's representation is one of malingering or symptom magnification...it is known that claimants with fibromyalgia may have symptoms that are disproportionate with the objective clinical findings.'"

- "On March 31, 2006, she followed up with Dr. H. Vic Singh...he...documented continued **significant intractable pain** in the muscles, diffusely due to fibromyalgia, takes 2-3 Norco daily."

- "Dr. Singh indicated...she is **too incapacitated with Fibromyalgia to work even in a sedentary capacity**."

- "Dr. Singh **documented multiple tender areas** in the back, chest, arms, legs and hands and diagnosed her with **severe fibromyalgia**."

- "On June 21, 2006, she followed up with Dr. Singh due to complaints of fatigue and overwhelming pain in her entire body, in her neck, mid thoracic, lumbar areas, bilateral calves and bilateral hands...getting very depressed due to pain."

- "Upon examination Dr. Singh documented positive tender points in the arms, legs, neck and multiple spots on her back."

- "On October 6, 2006, Dr. Singh documented abnormal findings to

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9171 TEL 909 621 4935

1  include a new complaint of neck pain with radiation to the right arm;

2  extreme fatigue..."

3  ▪ "X-rays of the Cervical Spine performed on November 2, 2006

4  showed a C5-6 Spondylosis..."

5  ▪ "On November 13, 2006, Dr. H. Vic Singh...indicated that...based

6  on his examination of the patient...'I still feel that **she is unable to**

7  **work in any occupation** due to disabling pain and fatigue from

8  Fibromyalgia...'"

9  ▪ "On December 11, 2006, she was evaluated by Dr. David Chow,

10  Double Board Certified in Physical Medicine and Rehabilitation and

11  Pain Medicine/Pain Management, for bilateral low back pain

12  radiating into her bilateral posterior calves."

13  ▪ "Dr. Chow's impression/differential diagnoses were: 1) lumbar disc

14  protrusion; 2) lumbar annular disc tear; 3) bilateral S1 lumbosacral

15  radiculopathy; 4) cervical disc protrusion; 5) cervical degenerative

16  disc disease; 6) lumbar degenerative disc disease; 7)

17  Fibromyalgia."

18  ▪ "MRI of the lumbar spine performed on December 19, 2006, was

19  interpreted by Robert Schier, M.D. with the following findings: There

20  are...bony degenerative changes at all levels...L3-4 and...L4-5 disc

21  space narrowing...1-2 mm diffuse annular bulges from L4-L5

22  through L5-S1..."

23  ▪ "MRI of the cervical spine was also performed on December 19,

24  2006 with the following findings: 1) at C2-3, C3-4, C4-5, there

25  are...bony degenerative changes...1 mm broadbased bulges at

26  C3-4 and C4-5...There is a 3 mm broadbased posterior and right

27  paramedian bulge with annual tear and with...anterior flattening of

28  the cord on the right..." (Emphasis added.)

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9171 TEL 909 621 4935

15.    In further support of her disability, on or about May 31, 2007, an Employability Analysis completed on or about March 2, 2007, by Paul Broadus MA, a vocational expert, was submitted to CANADA LIFE. According to that report:

- Her occupation "…is classified as O*Net Code 43-6012.00 – Legal Secretaries. Among others, O*Net lists the following duties as material and substantial: Perform secretarial duties utilizing legal terminology, procedures, and documents. Prepare legal papers and correspondence, such as summonses, complaints, motions, and subpoenas."

- "O*Net lists the following abilities as necessary to perform this occupation: Interacting with Computers…Finger Dexterity…Manual Dexterity…Wrist-Fingers Speed…Arm-Hand Steadiness…Control Precision…Trunk Strength…Handling and Moving Objects…Performing General Physical Activities…"

- "The *Own Occupation Assessment* [completed] at the request of Jefferson Pilot concluded that Ms. Suarez could perform the essential functions of her own occupation, based on an ability to return to sedentary work."

- "However, the analyst noted that Ms. Suarez's employer specified that the job involved lifting 11-25 pounds occasionally."

- "This exceeds the U.S. Department of Labor's physical demands for a sedentary work category, and places it instead slight more strenuous than the Light Work Category (Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently)."

- "Furthermore, the vocational rehabilitation consultant hired by Jefferson Pilot stated that Ms. Suarez would need accommodation to perform the job duties required by her employer."

- "Ms. Suarez's treating doctors have reported that she is unable to

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9171 TEL 909 621 4935

1                  perform even sedentary work duties."

2           •   "John Gandolfi, MD, reported on 8/4/04 that she was unable to stand

3                or sit, and on 4/5/05 that she had a severe limitation of functional

4                capacity and was incapable of performing minimum activity."

5           •   "He found her to be totally disabled from her present occupation and

6                from all other occupations."

7           •   "H Vic Singh, MD reported on 11/22/05 that he…found that Ms. Suarez

8                could perform sedentary work."

9           •   "He reported that she was so incapacitated that even sedentary activity

10              was inappropriate for her, and that she could no longer work in any

11              capacity."

12          •   "Accordingly, due to all of these factors, **Ms. Suarez is unable to work**

13              **in her regular position as a Legal Secretary, both as it is**

14              **performed for her employer, and as performed in the national**

15              **labor market.**"

16          •   "The restrictions which she has been given prevent her from

17              performing those work activities that would make her a feasible

18              candidate for employment in the open labor market." (Emphasis

19              added.)

20      16.     Despite the overwhelming evidence of disability, on or about June 15,

21  2007, CANADA LIFE upheld its unreasonable, arbitrary and capricious denial of

22  benefits. According to CANADA LIFE's letter:

| Allegations | True Facts |
|---|---|
| "Canada Life…paid Ms. Suarez long term disability benefits from the end of her 90 day elimination period…(07/02/04) to 04/01/06." | |
| "Benefits beyond 04/01/06 were denied as it was found that the medical evidence in Ms. Suarez's claim file did not support…ongoing restrictions and limitations that would | |

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9771 TEL 909 621 4935

| Allegations | True Facts |
|---|---|
| "prevent her from performing her occupation as a Legal Secretary." | |
| "Ms. Suarez "...has exhausted her rights of appeal." | |
| "Ms. Suarez's occupation as of the date she stopped working was indicated to be a legal secretary."<br><br>"A detailed own occupation analysis was performed which supported that according to the Dictionary of occupational titles (DOT), the occupation of legal secretary is performed at the sedentary demand level." | ▢ CANADA LIFE relied upon outdated information by using the DOT[4].<br><br>▢ Additionally, the DOT only considers the physical aspects of an occupation, not the cognitive skill, attention and concentration that is necessary to perform an occupation such as a legal secretary. As has been shown, MS. SUAREZ suffers from significant intractable pain (actually described by one of CANADA LIFE's own reviewing doctors as "chronic pain"), which can disable (and has disabled MS. SUAREZ) a person from an occupation, such as MS. SUAREZ's, that requires cognitive skills, including careful thought and concentration.<br><br>▢ And, as pointed out by MS. SUAREZ in her appeal: Ms. Suarez's employer specified that the job involved lifting 11-25 pounds occasionally. This exceeds the |

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

---

[4] According to the United States Department of Labor, the DOT was created by the Employment and Training Administration, was last updated in 1991, and has been replaced by the O*NET.

| Allegations | True Facts |
|---|---|
|  | U.S. Department of Labor's physical demands for a sedentary work category, and places it instead slight more strenuous than the Light Work Category (Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently), which CANADA LIFE has not alleged MS. SUAREZ can perform.<br><br>▢ In fact, CANADA LIFE's own reviewing doctor stated on or about April 20, 2007: "A work capacity of light occupation would not be appropriate for her condition..." |
| "Jefferson Pilot Financial had Ms Suarez attend a Functional Capacity Evaluation (FCE) on 7/25/05." | ▢ That FCE, which only lasted for two (2) hours, actually confirmed what MS. SUAREZ and her physicians have contended all along make her disabled – she cannot work due to fatigue and pain.<br><br>▢ As stated in the FCE, MS. SUAREZ was unable to complete the evaluation without requests for additional rest periods due to report of fatigue.<br><br>▢ The FCE also listed the following as MS. SUAREZ's major areas of dysfunction: dynamic strength; position tolerance; and, |

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 · TEL 909 621 4935

| Allegations | True Facts |
|---|---|
| | manual dexterity. Without "position tolerance" and "manual dexterity," it is hard to imagine how MS. SUAREZ could perform her substantial and material duties for a full eight hour day, when she was not even able to complete a two (2) hour test. |
| | ◘ And, the FCE evaluator also determined that the factors underlying MS. SUAREZ' functional limitations included generalized de-conditioning; pain in the lower back, bilateral forearms and bilateral calves; generalized fatigue; and fear of re-injury. |
| | ◘ Therefore, any reliance by CANADA LIFE upon this report to deny disability benefits to MS. SUAREZ is unreasonable, arbitrary and capricious. |
| "We sent Ms. Suarez for an Independent Medical Evaluation (IME) on 09/09/06 with a board certified rheumatologist..." | ◘ Once again, this examination actually offered further evidence of MS. SUAREZ's disability, as the doctor reported: "The diagnosis of osteoarthritis and fibromyalgia was confirmed by the medical records and physical exam...The claimant...has multiple trigger points in exam...she may not drive because of her...pain...it is not this examiner's opinion that the claimant's |

| Allegations | True Facts |
|---|---|
| | representation is one of malingering or symptom magnification…it is known that claimants with fibromyalgia may have symptoms that are disproportionate with the objective clinical findings." |
| | ▫ CANADA LIFE's selective review of medical evidence contained in this and other reports to justify denial of benefits is arbitrary and capricious. |
| "An independent medical peer review by a board certified rheumatologist was performed on Ms. Suarez's claim file on 12/28/05." | ▫ This doctor stated that MS. SUAREZ "…**needs to participate in** a **chronic pain program** in order to maximize her level of function." Therefore, this doctor confirmed that MS. SUAREZ was suffering from "chronic pain," which is defined as pain which persists over a longer period of time than acute pain and is resistant to most medical treatments. ▫ This doctor stated that an examination by a rheumatologist was needed. CANADA LIFE had MS. SUAREZ examined by a rheumatologist in 2006, and that doctor confirmed not only her diagnosis, but also her disability when he stated: "The diagnosis of osteoarthritis and |

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9711 TEL 909 621 4935

| Allegations | True Facts |
|---|---|
| | fibromyalgia was confirmed by the medical records and physical exam...The claimant...has multiple trigger points in exam... ... she may not drive because of her...pain...it is not this examiner's opinion that the claimant's representation is one of malingering or symptom magnification...it is known that claimants with fibromyalgia may have symptoms that are disproportionate with the objective clinical findings."' |
| | ◘ Therefore, any reliance by CANADA LIFE upon this report to deny disability benefits to MS. SUAREZ is unreasonable, arbitrary and capricious. |

CANADA LIFE also had another medical record review conducted on or about April 20, 2007. However, once again, CANADA LIFE selectively choose what it relied upon in that report and failed to adequately consider the statements by that doctor which confirmed MS. SUAREZ' disability.

For example, that doctor stated:

- "It is obvious that the patient suffers from a chronic pain syndrome..."
- "...after reviewing these medical records...it seems that the patient suffers from a...chronic pain syndrome in the presence of associated disorders, such as depression, chronic fatigue, and sleep disorder."
- "Whether you want to call it fibromyalgia, myofascial pain, or

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 9771  TEL 909 621 4935

| Allegations | True Facts |
|---|---|

lumbosacral spondylosis, it is all semantics."

- "The important fact is that the patient's pain needs to be controlled and she needs to be rehabilitated back to a full functional state."

- "This will be complex and need to be approached in a multidisciplinary fashion with the help of various subspecialists, along with the utilization of both pharmacological and non-pharmacological modalities."

17.    To date, even though MS. SUAREZ has been, and remains, disabled, CANADA LIFE has not paid MS. SUAREZ long term disability benefits past April 1, 2006 . The arbitrary and capricious nature of CANADA LIFE's denial decision is evidenced by, but not limited to, the following:

- CANADA LIFE engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to provide a complete copy of all documents, records, and other information relevant to her claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);

- CANADA LIFE ignored the obvious, combed the record and has taken selective evidence out of context as a pretext to deny Plaintiff's claim;

- CANADA LIFE did not give proper weight to the Social Security Administration's continued finding that MS. SUAREZ was disabled from any occupation[5]; and,

- CANADA LIFE ignored the opinions of MS. SUAREZ's treating physicians.  Deference should be given to the treating physician's opinions as there are no *specific*, *legitimate* reasons for rejecting the treating physician's opinions which are based on *substantial evidence*

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

1    in the claim file.  Further, CANADA LIFE's **physician's** opinions do not

2    serve as *substantial evidence*, as they are not *supported by*

3    *evidence* in the claim file nor are they *consistent with the overall*

4    *evidence* in the claim file.

5       18.    For all the reasons set forth above, the decision to deny disability

6    insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational, sorely

7    contrary to the evidence, contrary to the terms of the Plan and contrary to law. Clearly,

8    CANADA LIFE abused its discretion in deciding to deny this claim as the evidence

9    shows its denial decision was arbitrary and capricious. Further, CANADA LIFE's denial

10   decision and actions heighten the level of skepticism with which a court views a

11   conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458

12   F.3d 955 (9th Cir. 2006).

13      19.    As a direct and proximate result of the Defendants' failure to provide MS.

14   SUAREZ with disability benefits, MS. SUAREZ has been deprived of said benefits from

15   on or about April 1, 2006, to the present date.

16      20.    As a further direct and proximate result of the denial of benefits, MS.

17   SUAREZ has been required to incur attorney fees to pursue this action, and is entitled

18   to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA §

19   502(g) (1).

20      21.    A controversy now exists between the parties as to whether MS. SUAREZ

21   is disabled as defined in the Plan.  Plaintiff seeks the declaration of this Court that she

22   meets the Plan definition of disability and thus she is entitled to benefits from the Plan.

23      WHEREFORE, Plaintiff prays for relief against Defendants as follows:

24      1.    An award of benefits in the amount not paid MS. SUAREZ from on or

25   about April 1, 2006, to the date of judgment herein, together with interest at the legal

26   rate on each monthly payment from the date it became due until the date it is paid;

27   _____

28   [5] A Plan administrator may not arbitrarily disregard a favorable ruling by the Social Security Administration
     as, at a minimum, it provides support for the conclusion that an administrative agency charged with

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711  TEL 909 621 4935

1      2.    An order determining that MS. SUAREZ was entitled to payments so long

2  as she remains disabled as defined in the Plan;

3      3.    An order requiring CANADA LIFE to pay $110 a day, from the date first

4  requested, for each day in which CANADA LIFE failed or refused to comply with

5  Plaintiff's requests for information which CANADA was required, by statute/regulation,

6  to furnish pursuant to ERISA section 502(c) [29 USC sec. 1132(c)].

7      4.    For reasonable attorney fees incurred in this action; and

8     22.    For such other and further relief as the Court deems just and proper.

9

10  DATED:  February 21, 2008          SHERNOFF BIDART & DARRAS, LLP

11

12                                  FRANK N. DARRAS

13                                  Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

examining MS. SUAREZ's medical records found objective support for its favorable decision.

TOWNSEND AND TOWNSEND
AND CREW LLP

GROUP LONG TERM
DISABILITY PLAN

GDC97

000019    EXHIBIT A

## TABLE OF CONTENTS

STATEMENT TO INSUREDS ................................................5

SCHEDULE OF INSURANCE ..................................................13

DEFINITIONS ..........................................................15
    GENERAL DEFINITIONS.............................................15
    DEFINITION OF DISABILITY AND DISABLED ..........23
    RECURRENT DISABILITY .............................................24
    CONCURRENT DISABILITY...........................................24

BECOMING INSURED ........................................................26
    WHEN YOUR INSURANCE BEGINS.........................26

CHANGES IN INSURANCE.................................................27
    CHANGE IN CLASS OR MONTHLY EARNINGS.........27

WHEN YOUR INSURANCE ENDS.......................................28

INCOME FROM OTHER SOURCES ...................................30
    COST OF LIVING FREEZE IN INCOME FROM
    OTHER SOURCES.................................................33

AMOUNT OF MONTHLY INCOME PAYMENT.....................35

EXCLUSIONS AND LIMITATIONS ......................................43
    PRE-EXISTING CONDITION EXCLUSION....................43
    GENERAL EXCLUSIONS ...........................................44
    DISABILITY LIMITATIONS.........................................46

WHEN YOUR MONTHLY INCOME BENEFITS END............49
    BENEFITS AFTER POLICY CANCELLATION .............50
    PREMIUM WAIVER .......................................................51

CONTINUITY OF COVERAGE UPON CHANGE OF
INSURERS ....................................................................52

000020        EXHIBIT  A

**SURVIVOR BENEFIT**............................................................53

**REHABILITATION FEATURE**............................................54

**CLAIM PROVISIONS**........................................................56
    NOTICE OF CLAIM......................................................56
    PROOF OF DISABILITY..............................................56
    TIME OF PAYMENT OF CLAIM ...............................56
    EXAMINATIONS...........................................................58
    OUR RIGHT TO REQUIRE PROOF OF FINANCIAL
    LOSS................................................................................58
    PROOF OF CONTINUING DISABILITY ....................58
    IF YOUR CLAIM IS DENIED ...................................60

**GENERAL PROVISIONS**...................................................61
    ASSIGNMENT ...............................................................61
    CURRENCY ...................................................................61
    CLASS MEMBERSHIP ................................................61
    MISREPRESENTATION OF EMPLOYEE
    INSURANCE ..................................................................61
    INCONTESTABILITY OF EMPLOYEE INSURANCE ..61
    MISSTATEMENT OF AGE OR OTHER FACTS ...........63
    ERRORS ........................................................................63
    AGENCY........................................................................63
    CHANGES TO POLICY ...............................................63
    ENFORCEMENT OF POLICY TERMS .....................64
    LEGAL ACTIONS.........................................................65
    EFFECT ON WORKERS' COMPENSATION .................65

**SUMMARY PLAN DESCRIPTION INFORMATION**..............66

**STATEMENT OF ERISA RIGHTS** ....................................71

000021

EXHIBIT A

# STATEMENT TO INSUREDS

## THE CANADA LIFE ASSURANCE COMPANY

### HEAD OFFICE: 6201 POWERS FERRY RD., NW
### ATLANTA, GEORGIA, 30339

HAS ISSUED

GROUP DISABILITY INCOME POLICY 38504 LTD

TO

TOWNSEND AND TOWNSEND AND CREW LLP

This Booklet-Certificate is issued to insured persons as evidence of their coverage. It explains the features of the group plan. Canada Life urges You to read it with care so that You will have a full understanding of the Plan and what it could mean to You and Your family.

This Booklet-Certificate takes the place of all certificates which may have been issued to You before. It is an important document and should be kept in a safe place. It is void and of no effect if You are not entitled to or have ceased to be entitled to the insurance coverage. No clerical error will invalidate Your insurance coverage if it is otherwise validly in force.

Fraud:

It is a crime if, knowingly, and with intent to injure, You defraud or deceive Us, or provide any information that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of Your claim and are subject to prosecution and punishment to the full

5

000022    EXHIBIT A

extent under state and/or federal law.  Canada Life will pursue all
appropriate legal remedies in the event of Insurance fraud.

GDC97-02

6

EXHIBIT A

In the event that you need to contact someone about this insurance, you may contact the insurance company issuing this insurance at the following address and telephone number.

Group Customer Service Center
The Canada Life Assurance Company
6201 Powers Ferry Road
Atlanta, Georgia 30348
Telephone: (800) 554-4026

If discussions with us at The Canada Life Assurance Company fail to produce a satisfactory resolution to your problem, you may contact:

Consumer Service Division
California Department of Insurance
300 South Spring Street
Los Angeles, California 90013
(800) 927-4357

7

000024                    EXHIBIT   A

## CALIFORNIA LIFE AND HEALTH INSURANCE GUARANTEE ASSOCIATION ACT SUMMARY DOCUMENT AND DISCLAIMER

Residents of California who purchase life and health insurance and annuities should know that the insurance companies licensed in this state to write these types of insurance are members of the California Life and Health Insurance Guarantee Association ("CLHIGA"). The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guarantee Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, as noted in the box below, and is not a substitute for consumer's care in selecting companies that are well-managed and financially stable.

The California Life and Health Insurance Guarantee Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in California. You should not rely on coverage by the Arkansas Life and Health Insurance Guarantee Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guarantee Association to induce you to purchase any kind of insurance policy.

8

EXHIBIT A

Policyholders with additional questions should first contact their insurer or agent, or may then contact:

| | | |
|---|---|---|
| California Life and Health Insurance Guarantee Association P.O. Box 17319 Beverly Hills, CA 90209-3319 | or | Consumer Service Division California Department of Insurance 300 South Spring Street Los Angeles, CA 90013 |

9

EXHIBIT A

Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Association.

## COVERAGE

Generally, individuals will be protected by the California Life and Health Insurance Guarantee Association if they live in this state and hold a life or health insurance contract, or an annuity, of if they are insured under a group insurance contract, issued by a member insurer.   The beneficiaries, payees, or assignees of the insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are NOT protected by this Guarantee Association if:

*    Their insurer was not authorized to do business in this state when it issued the policy or contract;

*    Their policy was issued by a health care service plan (HMO), Blue Cross, Blue Shield, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society;

*    They are eligible for protection under the laws of another state.   This may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state.

The Association also does NOT provide coverage for:

*    Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which guarantee rights to group contract holders, not individuals;

10

000027                    EXHIBIT A

* Employer or association plans, to the extent they are self-funded or uninsured;

* Synthetic guaranteed interest contracts;

* Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as variable contract sold by prospectus;

* Any policy of reinsurance unless an assumption certificate was issued;

* Interest rate yields that exceed an average rate;

* Any portion of a contract that provides dividends or experience rating credits.

## LIMITS ON AMOUNTS OF COVERAGE

The Act also limits the amount the Association to pay benefits as follows:

* 80% of what the life insurance company would owe under a life policy or annuity contract up to

* $100,000 in cash surrender values,

* $100,000 in present value of annuities, or

* $250,000 in life insurance death benefits.

* A maximum of $250,000 of for any one insured life no matter how many policies and contracts there were with the same company, even if the policies provided different types of coverages.

## HEALTH BENEFITS

* A maximum of $200,000 of the contractual obligations that the health insurance company would owe were it not insolvent. The maximum may increase or decrease annually based upon changes in the health care cost component of the consumer price index.

11

000028                          EXHIBIT A

## PREMIUM SURCHARGE

Member insurers are required to recoup assessments paid to the Association by way of a surcharge on premiums charged for health insurance policies to which the Act applies.

12

000029    EXHIBIT A

## SCHEDULE OF INSURANCE

Class:                          Name:    1

                                Description:  Each Eligible Employee

Service Waiting Period:         The first day of the month coincident
                                with or next following your first day of
                                employment.

Benefit Percentage:             67%

Maximum Benefit:                $12,000

Minimum Benefit:                At no time will Your benefit be less than
                                $100 per month unless otherwise
                                provided under the terms and conditions
                                of this policy.

Your Monthly Income Benefit helps to protect You from loss of
income due to a Disability as defined in the Policy. Your Monthly
Income Benefit is subject to maximums and to reductions by Your
Income From Other Sources. Refer to the Amount of Monthly
Income Benefit for Disability sections for details about how Your
Monthly Income Benefit is calculated.

Elimination Period:             90 days

13

000030                    EXHIBIT  A

Maximum Benefit Period:

| AGE AT DATE DISABILITY COMMENCES | MAXIMUM BENEFIT PERIOD |
|---|---|
| Under 60 | to age 65 (a minimum of 60 Monthly Income Benefit payments will be made). |
| 60 | 60 Monthly Income Benefit payments |
| 61 | 48 Monthly Income Benefit payments |
| 62 | 42 Monthly Income Benefit payments |
| 63 | 36 Monthly Income Benefit payments |
| 64 | 30 Monthly Income Benefit payments |
| 65 | 24 Monthly Income Benefit payments |
| 66 | 21 Monthly Income Benefit payments |
| 67 | 18 Monthly Income Benefit payments |
| 68 | 15 Monthly Income Benefit payments |
| 69 or over | 12 Monthly Income Benefit payments |

Premium Contributions:    Your coverage is non-contributory. This means Your employer pays all of Your premium for you.

You must read this Schedule of Insurance in conjunction with the rest of the Policy.

GDC97-03

14

## DEFINITIONS

Below are the terms as defined in the Policy.

All male terms will include the female term, unless stated otherwise.

## GENERAL DEFINITIONS

Accident means an occurrence causing Injury, damage or loss.

Actively at Work means that You are *either*:
- (a) actually performing Your normal duties, if it is a scheduled work day; *or*
- (b) capable of performing Your normal duties, if You are *not* at work due to a non-scheduled work day, holiday or vacation day;

at Your normal place of employment or at some other location where Your Employer's business requires You to be.

Annual Earnings are based on the premium amount received at the time Canada Life receives Proof of Your Disability.

Annual Earnings as used to determine your benefits under the group policy will be calculated as your annual gross base earnings as an employee. They exclude any income You receive such as, but not limited to, bonuses, dividends, overtime, and profit sharing.

However, if you are a partner, then your income will be calculated as follows:

1. If you have been a partner for at least 24 months, your average annual net earnings from self-employment during the

15

000032          EXHIBIT A

immediately preceding 24 months as set forth on your IRS Form 1065, Schedule K-1.

2.   If you have been a partner for less than 24 months, the amount that is estimated by the firm.   The estimate must reflect a reasonable expectation of the income to be earned.   Your benefits will be based on the lesser of (a) your actual earnings and (b) the estimated level of earnings on which premiums are being paid.

16

000033    EXHIBIT A

Appropriate Evaluation and Treatment means medical care and treatment that meets *all* of the following:

1. It is received from a Physician whose expertise, medical training and clinical experience are suitable for treating Your Disability; *and*

2. It is deemed medically necessary and appropriate to meet the needs of your Disability; *and*

3. It is consistent in type, frequency and duration of treatment with relevant guidelines based on national medical, research and health care organizations and governmental agencies; *and*

4. It is consistent with the diagnosis of Your condition; *and*

5. Its purpose is maximizing Your medical improvement and aiding in your return to work.

CPI-W means the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. If the index is discontinued or changed, another comparable index may be used by Us.

Disability means You have a Total Disability *or* a Residual Disability as defined in this Policy.

Disabled means You are Totally Disabled *or* Residually Disabled as defined in this Policy.

Effective Date means September 1st, 1998. Plan was last revised October 1st, 1999.

17

000034          EXHIBIT A

Eligible Employee means each active full time employee working at least 20 hours per week on a regular basis and "Of Counsel" attorneys who works an average of 20 hours per week, based on a 12 month average and is a legal citizen or resident of the United States or Canada. This does not include temporary, seasonal, or contract employees.   An Employee who is not a citizen is ineligible for Insurance if he leaves the United States or Canada for one hundred eighty (180) or more consecutive days.

"Of Counsel" attorneys will not be covered if the number of hours worked is zero for a full month.

Elimination Period is the period that You must have been continuously Disabled before You may receive payments under the policy as outlined in the Schedule of Insurance.  The Elimination Period begins on the day that You meet the Definition of Disability under this Policy.  If You cease to be Disabled for 30 days or less during the Elimination Period, those days will not interrupt the Elimination Period and the Disability will be treated as continuous. You must serve the *full 90 day* Elimination Period within a total period equal to 120 days.  Any day that You cease to be Disabled as defined under this Policy will not be considered to satisfy the Elimination Period.

Employer means the Policyholder.

Hospital or medical facility means a facility accredited by JCAHO (Joint Commission on Accreditation of Health Care Organizations) to provide medical evaluation and treatment of patients under the direction of an active staff of licensed physicians.

Hospitalization means being an in-patient 24 hours a day.

18

EXHIBIT   A

Indexed Pre-Disability Monthly Earnings means Your Monthly Earnings immediately prior to the date You became disabled, increased by an index factor. The index factor adjustment will be made starting on the 13th benefit payment and on each anniversary of that date. The amount of each adjustment will be the *lesser* of:

(a)    10%; *or*
(b)    the percentage increase in the CPI-W during the prior Calendar Year.


Injury means bodily injury caused by an Accident.


Insurance means the group long term disability income insurance coverage provided by the Policy.


Leave of Absence means an arrangement where You and the Employer agree that You will not be Actively at Work for a specific period of time and You are expected to be Actively at Work at the end of that period. If an Eligible Employee becomes Disabled while on Leave of Absence, Monthly Income Benefits will be based upon Monthly Earnings as last reported to Canada Life immediately prior to the beginning of the Leave of Absence.


Legal Residence means a place of permanent residence. This is a fixed place of residence which You intend to be Your home and to which You intend to return despite temporary residences elsewhere or temporary absences.


Material and Substantial Duties means duties that:

a)    are normally required for the performance of Your own or any occupation; *and*

19

000036          EXHIBIT A

b)    cannot be reasonably omitted or modified.

Monthly Earnings means Your Annual Earnings divided by 12.

Monthly Income Benefit means the *lesser* of:

a)    the amount of Your Pre-Disability Monthly Earnings multiplied by the Benefit Percentage; *or*
b)    the Maximum Benefit as shown in the Schedule of Insurance.

Monthly Income Payment means Your Monthly Income Benefit as calculated under the Amount of Monthly Income Payment provision.

No fault Auto Insurance means a motor vehicle plan or policy that pays benefits without regard to who was at fault in any motor vehicle Accident that occurs.

Own Occupation means the duties that You regularly performed for which You were covered under this Policy immediately prior to the date Your Disability began. The occupation may involve similar duties that could be performed with Your Employer or any other employer.

Physician means a qualified doctor of medicine, other than You or a member of Your family, who is both licensed by at least one state to practice medicine and who is providing You with appropriate medical care within the area of his or her medical training and qualifications.

Policy means the group long term disability income policy issued by Canada Life to the Policyholder and described by this Certificate.

20

000037        EXHIBIT A

Pre-Disability Monthly Earnings means Your Monthly Earnings immediately prior to the date you became Disabled.

Pregnancy includes childbirth or miscarriage and any disease or infirmity resulting from or aggravated by the pregnancy. It also includes therapeutic abortions or complications arising from any abortion.

Prior Plan means a policy or plan of group long term disability income benefits which this Policy replaces and which was in force until the day before September 1st, 1998.

Sickness means an illness, disease, or pregnancy.

Social Security Plan means disability or retirement benefits that You, Your spouse or any of Your dependents have received or are eligible to receive because of Your Disability under:
1.  the United States Social Security Act;
2.  the Canada Pension Plan;
3.  the Quebec Pension Plan;
4.  any other Federal, State, provincial or local government act or law.

21

EXHIBIT A

000038

We, Us, and Our mean the insurer, Canada Life Assurance Company.

Work Earnings means Your gross Monthly Earnings from work You perform while Disabled, including Earnings from Your Employer, any other employer or self-employment.  If You are paid in a lump sum or on a basis other than monthly, Canada Life will prorate Your Work Earnings over the period of time to which they apply.  If no period of time is stated, Canada Life will use a reasonable period of time.  Work Earnings will not include any renewal commissions, overriding renewal commissions, or service fees received on business sold before You became Disabled.

You and Your mean an Eligible Employee.

Other terms are defined elsewhere in the Policy.

GDC97-04

22

000039   EXHIBIT A

## DEFINITION OF DISABILITY AND DISABLED

Totally Disabled and Total Disability mean during the Elimination Period and thereafter because of an Injury or Sickness You meet *all* of the following:

(a) You are unable to do the Material and Substantial Duties of Your Own Occupation; *and*

(b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; *and*

(c) Your Work Earnings are less than 20% of Your Indexed Pre-Disability Monthly Earnings.

Residually Disabled and Residual Disability mean during the Elimination Period and thereafter because of an Injury or Sickness, You meet *all* of the following:

(a) You are unable to do the Material and Substantial Duties of Your Own Occupation; *and*

(b) You are receiving Appropriate Evaluation and Treatment from a Physician for that Injury or Sickness; *and*

(c) Your Work Earnings are between 20% to 80% of Your Indexed Pre-Disability Monthly Earnings.

The loss of a professional license, occupational license or certification does not in itself mean You are Disabled.

Your loss of earnings must be a direct result of Your Sickness, Pregnancy or Injury. Loss of earnings due to economic factors such as, but not limited to, recession, job elimination, pay cuts and job-sharing will not be considered.

GDC97-07

000040                    EXHIBIT   A

## RECURRENT DISABILITY

Recurrent Disability means a Disability which has the same cause as the original Disability and begins after you have returned to work for less than 6 months.

Canada Life will treat the Recurrent Disability as part of the original Disability, subject to *all* of the following:

(a) You will not have to satisfy a new Elimination Period if You have already satisfied the Elimination Period with Canada Life for the original Disability; *and*

(b) Any benefit payments will be subject to the terms of this policy for the original Disability; *and*

(c) You remain continuously insured under this Policy for the period between the original Disability and the recurrent Disability.

Any disability that does not have the same cause as the original Disability that occurs during the 6 month period will be treated as a new Disability and You must satisfy a new Elimination Period.

If the Recurrent Disability begins more than 6 months after the end of the original Disability, You must satisfy a new Elimination Period.

You will not receive benefits under this provision if You are entitled to receive benefits under either any other group long term disability income policy or plan.

## CONCURRENT DISABILITY

If a new Disability occurs while Monthly Income Benefits are payable, it will be treated as part of the same period of Disability and is subject to *both* of the following:

1. The Maximum Benefit Period; *and*

24

000041                          EXHIBIT A

2.  Exclusions and Limitations provisions.

GDC97-12

25

EXHIBIT A

## BECOMING INSURED

## WHEN YOUR INSURANCE BEGINS

If *Your Employer pays* the entire premium for Your Insurance, Your Insurance begins on the first day You are Actively at Work following the date that You become an Eligible Employee and have satisfied the Service Requirement as outlined in the Schedule of Insurance. An application to become insured must be completed on a form approved for that purpose by Us. It must be promptly deposited with Us at Our Head Office.

GDC97-13

26

EXHIBIT A

## CHANGES IN INSURANCE

## CHANGE IN CLASS OR MONTHLY EARNINGS

The amount of Your Monthly Income Benefit may change if:

(a)    You become a member of a different Class; *or*
(b)    the amount of Your Monthly Earnings changes; *and*
(c)    Your Employer tells Canada Life in writing about a change in Class or a change in the amount of Monthly Earnings no later than 31 days after the change occurs; *and*
(d)    the premium paid is based on the change.

If the change would *decrease* Your amount of Insurance, the decrease takes effect on the date of the change.

If the change would *increase* Your amount of Insurance, the increase takes effect on the first day You are Actively at Work following the *later* of the date:

(a)    the change occurs; *or*
(b)    Canada Life approves Your Proof of Good Health, if You are required to give Proof of Good Health.

GDC97-14

27

000044          EXHIBIT A

## WHEN YOUR INSURANCE ENDS

Your Insurance will end on the *earliest* of the date:

1. the Policy is canceled; *or*

2. You cease to be a member of a Class defined on the Schedule of Insurance; *or*

3. the Policy is changed to end the Insurance for Your Class; *or*

4. that is the last day of the period for which premium was paid, if a premium is not paid when due; *or*

5. You retire; *or*

6. You die; *or*

7. Your Monthly Income Benefits end, if You are not again Actively at Work; *or*

8. You start full-time active duty with the armed forces of any country or international organization; *or*

9. You cease to be an Eligible Employee as defined in the Definitions of this policy; *or*

10. The end of the month following the month You cease to be Actively at Work due to an Injury or Sickness for which you do not receive Monthly Income Benefits.

11. You request, in writing, for Your Insurance to be terminated.

28

EXHIBIT A

12. You cease to be Actively at Work. However, Your Employer
    may continue Your Insurance (unless it ends due to any of the
    above reasons) during the following periods:

    (a) until the end of the month following the month You cease to
        be Actively at Work due to a temporary lay-off;
    (b) until the end of the month following the month You cease to
        be Actively at Work due to a Leave of Absence;
    (c) until the end of the month following the month You cease to
        be Actively at Work due to Your being called to active duty
        as a reservist with the Armed Forces Reserve;
    (d) during an absence from work due to a Leave of Absence that
        is in compliance with the Family Medical Leave Act.

After Canada Life determines that You are Disabled, Your Monthly
Income Benefits *will not* be affected by:

1.   termination or cancellation of the Employer's plan; *or*

2.   termination of Your coverage; *or*

3.   any amendment that is effective after the date You are
     Disabled.

GDC97-16

29

000046        EXHIBIT A

## INCOME FROM OTHER SOURCES

As set out in the Amount of Monthly Income Benefit for Disability sections, Canada Life takes into account the total of all Your Income From Other Sources in determining the amount of Your Monthly Income Benefit. Your Income From Other Sources is any amounts that You receive or are eligible to receive as a result of Your Disability from the following:

1.  Any amounts from the Employer as commissions. Work Earnings and Rehabilitative Benefits will not be used to reduce Your Monthly Income Benefit except as described in any applicable Income Offset Method, Proportionate Method and Rehabilitation Feature.

2.  Any amounts from a retirement or pension plan for which the Employer has paid any part of the cost, except for the portion of the benefits that represent Your contribution to the plan. The following *are not* considered to be retirement plans:

    a) profit sharing plans;
    b) thrift or savings plans;
    c) non-qualified plans of deferred compensation;
    d) plans under IRC Section 401(k) or 457;
    e) individual retirement accounts (IRA);
    f) tax sheltered annuities (TSA) under IRC Section 403 (b);
    g) stock ownership plans; or
    h) Keogh (HR-10) plans.

3.  Any amounts from other valid coverage of which we did not receive written notification prior to Your Disability. Other valid coverage is coverage not with Canada Life, providing benefits for loss of income for Your Disability. The following are considered to be other valid coverage:

30

EXHIBIT A

000047

a) any amounts from another group disability insurance policy or plan for which the Employer has paid any part of the cost:

31

000048

EXHIBIT A

b) any amounts from another group insurance policy for which the Employer has paid any part of the cost. A group Insurance policy is one which the Employer contributes toward or makes payroll deduction for *any* of the following:

    i)   other group health insurance policies to the extent that they provide benefits for loss of time from work due to disability; *and*

    ii)  a group life policy that provides installment payments for permanent total disability.

4.   Any amounts under a Workers' Compensation law, an occupational disease law, or any similar act or law.

5.   Any amounts because of Your disability or retirement under the United States Social Security Act or under any similar plan or act, including similar plans or acts in other countries. This includes *any* amounts from these sources because of Your disability or retirement that

a) You receive, are entitled to receive or would have been eligible to receive upon making timely application because of Your disability or retirement.

b) are available with respect to Your spouse and dependents (regardless of marital status or their place of Legal Residence) because of Your disability or retirement. If You are divorced or legally separated, benefits paid directly to Your dependents and not taken into constructive receipt by You will not be considered.

6.   Where allowed under state law, any amounts for loss of income under No-fault Auto Insurance.

000049       EXHIBIT A

7.  Any amounts for loss of income from a compromise, settlement, or damages whether disputed or undisputed.

8.  Any amounts from the Maritime Maintenance and Cure (Jones Act).

9.  Any amounts from any Unemployment Insurance Law or Program.

10. Any amounts as loss of income awards or loss of income settlements involving liability insurance or court actions.

## COST OF LIVING FREEZE IN INCOME FROM OTHER SOURCES

After Your Monthly Income Benefit is reduced, it is not subject to further reductions based on cost of living increases provided that the increase becomes effective while You are disabled and eligible to receive the Income from Other Sources.

### Rules for Income From Other Sources

You must apply for all the Income From Other Sources for which You are eligible and do what is needed to obtain them. If Your Social Security plan application is denied, Canada Life will assist you in appealing the decision by the Social Security plan to a level satisfactory to us.

As part of Your Proof of Disability, Canada Life requires that You furnish evidence to Canada Life that You have duly applied for all Income From Other Sources for which You are or may become eligible. This includes:

1.  making the application for such benefits; *and*
2.  if Your initial application is denied, and Canada Life so recommends, making any and all available appeals.

33

000050

EXHIBIT A

Canada Life must receive written proof that all available appeals have been exhausted.

**Estimate of Potential Income From Other Sources (or other Disability Benefits)**

Until you have given written proof to Canada Life that all available appeals have been exhausted, Canada Life may:

1. estimate Your monthly Income from Other Sources; *and*
2. reduce the Monthly Income Benefit payment by that amount.

If Canada Life reduces Your benefit on this basis, and if all of Your appeals are denied, Canada Life will restore the reduced amounts to You in one payment.

With proper authorization from You and your Physician, Canada Life will give You or Your legal representative information from Canada Life's claim file to assist in any appeal of denied disability or retirement benefits.

GDC97-17

34

000051    EXHIBIT A

## AMOUNT OF MONTHLY INCOME PAYMENT

Canada Life determines the amount of Your Monthly Income Payment for Total Disability as follows:

*Calculate the value of E as follows:*

| | | |
|---|---|---|
| A. | Multiply the Benefit Percentage shown on the Schedule of Insurance for the option for which you are insured. | _____% |
| | *Times* | |
| | Your Pre-Disability Monthly Earnings | X _____ |
| | Answer: | A = _____ |
| B. | The Maximum Benefit shown on the Schedule of Insurance for the option for which you are insured: | B = _____ |
| C | The smaller of A or B: | C = _____ |
| D. | Total all of Your Income from Other Sources: | D = _____ |
| E. | Subtract D from C:<br><br>(C) _____ - (D) _____ | |
| | Answer: | E = _____ |

GDC97-18

35

000052          EXHIBIT A

**Income Offset Method**

Canada Life determines the amount of Your Monthly Income
Benefit for Residual Disability as follows:

*Calculate the value of F as follows:*

| | | |
|---|---|---|
| A. | Multiply the Benefit Percentage shown on the Schedule of Insurance for the option for which you are insured. | _____ % |
| | *Times* | |
| | Your Pre-Disability Monthly Earnings | X |
| | | _____ |
| | Answer: | A = |
| | | _____ |
| B. | The Maximum Benefit shown on the Schedule of Insurance for the option for which you are insured: | B = |
| | | _____ |
| C. | The smaller of A or B: | C = |
| | | _____ |
| D. | You will subtract a percentage of Work Earnings as follows: For the first 12 monthly payments 0% For the next 12 monthly payments 25% For the remaining monthly payments 50% | |
| | The calculation is as follows: | |
| | The percentage from above: | _____ % |
| | *Times* | |
| | Work Earnings | X |
| | Answer: | _____ |
| | | D = |

36

EXHIBIT  A

000053

E.   Total all of Your Income from Other
Sources:

E =

F.   Subtract D and E from C:
(C) _____ - (D) _____ - (E)
_____

F =

37

EXHIBIT A

*Calculate the value of J as follows:*

G.   Your Pre-Disability Monthly Earnings:    G = 
_____

H.   Total all of Your Income from Other
Sources:    H = 
_____

I.   Your Work Earnings    I = _____

J.   Subtract H and I from G:    J = 
(G) _____ - (H) _____ - (I) _____
_____

*Your Monthly Income Payment equals the smaller of F or J as calculated above.*

GDC97-20

38

000055          EXHIBIT A

As long as Canada Life has not made an overpayment, Your Monthly Income Payment will not be less than the Minimum Benefit as shown on the Schedule of Insurance.

You can not receive a Monthly Income Benefit for Total Disability and a Monthly Income Benefit for Residual Disability at the same time.

Any time the total of:

(a) the Monthly Income Payment that You are receiving from this Policy; *and*

(b) Income from Other Sources; *and*

(c) any Work Earnings;

exceeds 100% of Indexed Pre-Disability Monthly Earnings, then the Monthly Income Benefit under this Policy will be reduced so that the total Monthly Income Benefit from all such sources does not exceed 100% of the Indexed Pre-Disability Monthly Earnings.

Monthly Income Benefits are paid monthly in arrears. Monthly Income Benefits are rounded to the nearest dollar.

## PRORATION

Any Monthly Income Benefit payable for less than a month will be prorated based on a 30-day month. The prorated amount may be less than the Minimum Benefit.

### Underpayments and Overpayments

If Canada Life determines that you have been paid less than You are entitled to, Canada Life will pay You the difference in one lump sum. If Canada Life determines that You have been paid more than

39

EXHIBIT A

You are entitled to, You must reimburse Canada Life in one lump sum.

If You do not reimburse Us, Canada Life may reduce or suspend Your Monthly Income Benefits each month until the lump sum has been exhausted or take other legal steps to recover the overpayment. If Canada Life reduces Your Monthly Income Benefit, the Monthly Income Benefit may be less than the Minimum Benefit shown in the Schedule of Insurance.

40

000057    EXHIBIT A

## Awards of Damages

You will be required to reimburse Canada Life for any benefits Canada Life pays to You if *both* of the following conditions are met:

1. Benefits are paid or payable under this policy with respect to You; *and*
2. You have a right to and do recover damages for loss of income from any person, organization, or legal entity that is or may be liable for any Injury, Accident, Sickness or other event giving rise directly or indirectly, to the Disability for which benefits are payable.

The term damages will include any lump sum or periodic payments with respect to past present or future loss of income.

If the damages you are awarded, when added to the benefits paid under this plan, exceed 100% of Your lost income, You must reimburse Us for the amount that exceeds 100% of Your lost income. The amount You must reimburse will not be more than the benefits paid under this Policy.

If You receive damages in one or more lump sum payments instead of in monthly payments, the reimbursement amount will be based on the amount of the award. You must provide satisfactory proof of the award to Canada Life, or We will reasonably estimate the amount to be reimbursed.

## Right of Reimbursement

Your lawyer may represent Canada Life's rights of reimbursement. However, Canada Life reserves the right to:

1. Appoint another lawyer to act on the behalf of Canada Life; *and*
2. Commence an action to pursue Canada Life's rights of reimbursement directly against a third party. You agree to fully

41

EXHIBIT A

co-operate with Canada Life in pursuing Canada Life's claim against the third party.

GDC97-22

42

000059    EXHIBIT A

## EXCLUSIONS AND LIMITATIONS

**PRE-EXISTING CONDITION EXCLUSION**

No amount of Monthly Income Benefit will be payable for any disability which is caused by, contributed to by, or resulting from a Pre-Existing Condition. A Pre-Existing Condition is any Injury, disease, Sickness, Pregnancy or mental disorder for which an ordinarily prudent person did or would have done *any* of the following within *90 days* prior to the date on which You became insured under this policy:

1.  visited or consulted a physician, hospital or medical facility *or*

2.  took clinical tests or received treatment. This includes (but is not limited to) taking pills, injections or other medication to treat any condition.

This exclusion will not apply if the Elimination Period for the disability begins after You have been Insured under this policy for at least *12 months*.

GDC97-23

43

EXHIBIT A

**GENERAL EXCLUSIONS**

Canada Life *does not* pay Monthly Income Benefits if Your Disability is caused by or related to *any* of the following:

1. Intentional self-inflicted injury while sane or insane.

2. An act or Accident of war, declared or undeclared, whether civil or international, and any substantial armed conflict between organized forces of a military nature.

3. Taking part in a riot or civil commotion.

4. Committing or attempting to commit a felony, or engaging in an unlawful act or illegal occupation, or committing or provoking an unlawful act.

5. Committing or attempting to commit an assault.

Canada Life *does not* pay Monthly Income Benefits for any of the following:

1. Any period while You are no longer receiving Appropriate Evaluation and Treatment from a Physician.

2. With respect to mental disorder, any period while You are not under the continuing care of a Physician specializing in psychiatric care or a designated medical practitioner approved by an appropriate body in the governing jurisdiction, or, if none by Us.

3. With respect to alcoholism and/or drug addiction, any period while You are not being actively supervised by and receiving continuing treatment from a rehabilitation center or a designated institution approved for such treatment by an appropriate body in the governing jurisdiction, or, if none, by Us.

44

000061    EXHIBIT A

4.  Any period in which You reasonably fail to submit to any medical examination requested by Us.

5.  Any period that You are confined to a penal or correctional institution.

6.  When You have applied for Monthly Income Benefits under fraudulent circumstances and these circumstances resulted in a conviction of fraud.

7.  Any period that any other requirement of the Policy is not met.

GDC97-27

45

000062          EXHIBIT   A

## DISABILITY LIMITATIONS

Mental Illness, Alcoholism, Substance Dependency

Payment of Monthly Income Benefits is limited to a maximum of 24 months during Your lifetime for Disability caused by or related to *any* of the following:

(a) Mental Illness *or*
(b) Alcoholism *or*
(c) Substance Dependency

This is not a separate maximum for each condition or for each period of Disability. This is a combined maximum for all periods of Disability and for all of these conditions.

However, if You are confined to a Hospital because of Disability after the end of the 24 months Canada Life will pay Monthly Income Benefits during Your confinement and for up to 60 days after You are discharged if You are still Disabled.

If within 60 days after You are discharged You are re-confined for at least 10 consecutive days because of the same Disability, then Canada Life will pay Monthly Income Benefits during Your re-confinement and for up to 60 days after You are discharged if You are still Disabled and for one additional recovery period up to 90 days.

Payment of Monthly Income Benefits will end earlier than stated above subject to the conditions of the When Your Monthly Income Benefits End section.

Mental Illness means a mental, nervous, stress-related, behavioral, or emotional disease or disorder of any type and resulting from any cause, including organic causes.

Alcoholism means an addictive relationship or pattern of use of alcohol.

46

000063    EXHIBIT A

Substance Dependency means an addictive relationship or pattern of use of drugs, chemicals, or similar substances.

47

EXHIBIT A

**Special Conditions**

Payment of Monthly Income Benefits is limited to a maximum of 24 months during Your lifetime for Disability caused by or related to Self-reported Symptoms.

This is not a separate maximum for each condition or for each period of Disability. This is a combined maximum for all periods of Disability and for all of these conditions.

However, if You are confined to a Hospital because of Disability after the end of the 24 months, Canada Life will pay Monthly Income Benefits during Your confinement and for up to 60 days after You are discharged if You are still Disabled.

If within 60 days after You are discharged You are re-confined for at least 10 consecutive days because of the same Disability, then Canada Life will pay Monthly Income Benefits during Your re-confinement and for up to 60 days after You are discharged if You are still Disabled and for one additional recovery period up to 90 days.

Payment of Monthly Income Benefits will end earlier than stated above subject to the conditions of the When Your Monthly Income Benefits End section.

Self-reported Symptoms means the manifestations of Your condition which You tell Your Physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine.

GDC97-29

48

000065      EXHIBIT A

## WHEN YOUR MONTHLY INCOME BENEFITS END

Monthly Income Benefits end on the *earliest* of the date:

1. You are no longer Disabled as defined in the Definition of Disability provision; *or*

2. You are no longer receiving Appropriate Evaluation and Treatment from a Physician; *or*

3. that the Maximum Benefit Period ends; *or*

4. set out under the Disability Limitations section, if that section applies; *or*

5. of Your death; *or*

6. that Canada Life asks You for proof that You are still Disabled if Canada Life does not receive proof of disability within a reasonable period of time; *or*

7. that Canada Life asks You for details about Your Income From Other Sources, if You do not give Canada Life details within 31 days of Canada Life's request; *or*

8. that Canada Life asks You to be examined by:
   a) a Physician; *or*
   b) health care professional; *or*
   c) vocational evaluator;

*of Canada Life's choice,* if You do not reasonably cooperate with the examiner or if You unreasonably decline to attend the examination; *or*

9. that You work, unless You are Residually Disabled and working in Rehabilitative Employment as part of a Rehabilitation Program approved by us; *or*

49

000066      EXHIBIT A

10. that You cease to reside in the United States or Canada; *or*

11. that You decline to participate in a Rehabilitation Program that Canada Life considers appropriate for Your situation and that is approved by an independent Physician; *or*

12. that any other requirement of the Policy is not met; *or*

13. with respect to mental disorder, any period while You are not under the continuing care of a Physician specializing in psychiatric care; *or*

14. with respect to alcoholism and/or drug addiction, any period while You are not being actively supervised by and receiving continuing treatment from a rehabilitation center or a designated institution approved for such treatment by an appropriate body in the governing jurisdiction, or, if none, by Us; *or*

15. any period in which You fail to submit any medical information requested by Us; *or*

16. any period that You are confined to a penal or correctional institution.

17. You have applied for Monthly Income Benefits under fraudulent circumstances.


GDC97-30


## BENEFITS AFTER POLICY CANCELLATION

Cancellation of the Policy does not by itself affect Your right to receive Monthly Income Benefits for a Disability that begins while

50

000067

EXHIBIT A

You were Insured. You must continue to comply with all requirements set out in the Policy.

GDC97-31

**PREMIUM WAIVER**

Canada Life does not require premiums to be paid for the period during which You are eligible to receive Monthly Income Benefits. Premium payments will be required after Your Monthly Income Benefits end if You continue to be Insured.  If Your claim is admitted by Us, premium will be refunded retroactively through the Elimination Period.

GDC97-32

51

000068    EXHIBIT A

## CONTINUITY OF COVERAGE UPON CHANGE OF INSURERS

In order to prevent loss of coverage when this policy replaces a group disability policy Your Employer had in force with another insurer within 60 days of termination of the prior policy, Canada Life will provide coverage in accordance with the following provisions.

Benefits for a Disability due to a Pre-Existing Condition may be payable to You provided:

(a) you were insured under the Prior Plan on the last day before the Effective Date of this group policy; *and*

(b) you were continuously insured under the group policy from the Effective Date of this Group Policy through the date the Pre-Existing Condition became disabling; *and*

(c) benefits would have been payable under the prior plan if the prior plan had remained in force, taking into consideration the Pre-Existing Condition Exclusion or Limitation, if any, of the prior plan.

If the above conditions are met, the benefit Canada Life pays will be the Monthly Income Benefit payable under this Policy. These benefits will be reduced by the amount of any benefits for which the prior insurer is liable.

Any payment Canada Life makes will be reduced by any payments made for the same Disability under the Prior Plan.

If You cannot satisfy the above conditions and You were covered under the plan that This Plan replaced at the time of transfer, benefits may be payable under This Plan. Canada Life will give consideration towards the continuous time You were covered under the Prior Plan and This Plan. If You then satisfy the above conditions, the maximum Monthly Income Benefit Payable under This Plan will not exceed the lesser of (i) the Monthly Income Benefit under This Plan; and (ii) the Monthly Income Benefit under the Prior Plan.

52

000069    EXHIBIT A

Payments will cease on the *earlier* of:

a)    the date benefits cease under this Policy; *or*
b)    the date benefits would have ceased under the Prior Plan.

The applicable Pre-Existing Condition Exclusion or Limitation will apply for the amount of Monthly Income Benefits in excess of the Monthly Income Benefit provided by the Prior Plan on the last day before the Effective Date of this group policy.

GDC97-33

## SURVIVOR BENEFIT

If You die while You are receiving Monthly Income Benefits, Canada Life will pay a single lump-sum Survivor Benefit. Canada Life must receive proof of Your death.

The Survivor Benefit equals 3 times the Monthly Income Benefit reduced by Income from Other Sources. Any Survivor Benefit will be applied first to reduce any outstanding overpayment of Monthly Income Payments.

Canada Life will pay the Survivor Benefit to Your legal spouse, if living. If Your spouse is not living, Canada Life will pay the Survivor Benefit divided into equal shares to Your children. Children must be under age 21, unmarried, and dependent on You for support and maintenance. Children include step-children, adopted children, and foster children. If there is no person entitled to the Survivor Benefit living at the time of Your death, we will not pay the Survivor Benefit.

GDC97-38

53

000070    EXHIBIT A

# REHABILITATION FEATURE

A Rehabilitation Program means a program of vocational rehabilitation *acceptable to Canada Life* that will lead to returning to work for the Employer or another employer.

Our rehabilitation specialists will make recommendations regarding Your vocational ability with the co-operation of Your Physician and other appropriate specialists. Canada Life will base the recommendation on *all* of the following:

(a) the nature of Your condition; *and*
(b) the expected length of Your Disability; *and*
(c) Your education, training, and experience; *and*
(d) Your work potential based on vocational assessments; *and*
(e) time and expense related to returning to work; *and*
(f) other factors related to Your own situation.

If, at any time, You decline to participate or cooperate in a rehabilitation evaluation/assessment or plan that Canada Life feels is appropriate and approved by Your Physician, we will cease paying Monthly Income Benefits.

If the Rehabilitation Program is *not* developed by Us, You must receive *written approval from Canada Life* before You start the program.

If You participate in an approved Rehabilitation program, Canada Life may:

(a) increase Your Monthly Income Benefit by 5% not to exceed the Maximum Benefit as shown in the Schedule of Insurance; *or*
(b) reimburse the Policyholder 50% of Your Monthly Earnings during the first 3 months of employment; *or*
(c) reimburse the Policyholder for reasonable modification/accommodation expense.

000071          EXHIBIT   A

GDC97-40

55

000072    EXHIBIT A

## CLAIM PROVISIONS

### NOTICE OF CLAIM

You must give written notice to Canada Life of a claim within 30 days after the date You complete the Elimination Period. If this is not reasonably possible, You must give Canada Life the written notice as soon as it becomes reasonably possible. Such notice must include Your name, Your address and policy number. When Canada Life receives Your written notice, Canada Life will send You claims forms that You must complete.

### PROOF OF DISABILITY

You must give Canada Life written Proof of Disability within 90 days after the end of the Elimination Period. If this is not reasonably possible, You must give Canada Life Proof of Disability as soon as it becomes reasonably possible, but not later than one year after the end of that 90 day period unless You lack legal capacity. If the Policy ends, You must give written notice and Proof of Disability for a Disability that began before the Policy ended within 90 days after the Policy ends.

Proof of Disability will include information from Your Physician about Your condition. You must authorize the release of Your medical information. You must give Canada Life any other information and items that Canada Life requires to support Your claim. Canada Life reserves the right to determine if Your Proof of Disability is satisfactory.

### TIME OF PAYMENT OF CLAIM

When We receive satisfactory Proof of Disability, benefits payable under this Policy will be paid monthly during any period for which

56

000073          EXHIBIT  A

we are liable.  Any balance which remains unpaid at the end of the period for which we are liable will be paid at that time.

57

EXHIBIT  A

## EXAMINATIONS

Canada Life may require You to be examined at the expense of Canada Life by one or more Physicians, health care professionals, or vocational evaluators of Canada Life's choice. Canada Life may require examinations at any time and as often as reasonably necessary. Canada Life will deny or stop Monthly Income Benefits if You do not attend an examination or if You do not cooperate with the examiner.    Additionally, Canada Life reserves the right to have the Eligible Employee interviewed by an authorized representative of Canada Life.

## OUR RIGHT TO REQUIRE PROOF OF FINANCIAL LOSS

Canada Life has the right to require written *proof of financial loss.* This includes, but is not limited to:

1. statements of Pre-Disability Income;
2. statements of income received from All Sources while disabled;
3. evidence that due application has been made for all other available benefits;
4. tax returns, tax statements, and accountants' statements; *and*
5. any other proof Canada Life reasonably may require.

Canada Life may perform financial audits at the expense of Canada Life as often as it reasonably may require.  Payment of benefits may be contingent upon the *proof of financial loss* being satisfactory to us.

## PROOF OF CONTINUING DISABILITY

From time to time You must give proof satisfactory to Canada Life at Your expense that You are still Disabled. Canada Life will ask You for this proof at reasonable intervals. Canada Life will stop Monthly Income Benefits if You do not give proof satisfactory to

58

000075          EXHIBIT A

Canada Life that You are still Disabled. Canada Life may investigate
Your claim at any time.

59

EXHIBIT A

**IF YOUR CLAIM IS DENIED**

If Canada Life wholly or partly denies Your claim, Canada Life will give You written notice of Canada Life's decision. Canada Life will:

1.  tell You the specific reason or reasons for the denial; *and*
2.  refer to the Policy provisions on which the denial is based; *and*
3.  describe any additional information or documentation You must submit to support Your claim.

If You want Canada Life to review a denial, You must ask Canada Life in writing within 60 days after receiving notice of the denial. When You request a review, You may give Canada Life written comments and additional items to support Your claim. Canada Life will review Your claim after receiving Your written request. Canada Life will give You written notice of Canada Life's decision within 60 days after Canada Life receives Your request, or within 120 days if special circumstances make an extension necessary.

GDC97-44

60

000077      EXHIBIT A

## GENERAL PROVISIONS

### ASSIGNMENT

You cannot assign Your rights or benefits under the Policy.

### CURRENCY

All payments made to or by Canada Life will be made in United States dollars.

### CLASS MEMBERSHIP

You may only be Insured under one Class only at any time.

### MISREPRESENTATION OF EMPLOYEE INSURANCE

Any statement You make in an application to become Insured is a representation and not a warranty. No representation made by You in an application to become Insured will be used to reduce or deny Your claim or contest the validity of Your Insurance unless:

(a) your Insurance would not have been approved except for Your misrepresentation; *or*

(b) your misrepresentation is contained in a written instrument signed by you; *or*

(c) we give You or Your representative a copy of the written instrument that contains Your misrepresentation.

### INCONTESTABILITY OF EMPLOYEE INSURANCE

After Your Insurance has been in force for twenty-four months, Canada Life will not use misrepresentations made by You in an application to become Insured to reduce or deny Your claim for a Disability beginning after the end of the two year period or to contest the validity of Your Insurance, unless the misrepresentations are

61

000078　　　EXHIBIT A

fraudulent. This section does not prevent Canada Life from using at any time a defense based on:

(a)  non-payment of premium; *or*
(b)  any other provision of the Policy; *or*
(c)  any other defense that is allowed by law.

62

000079

EXHIBIT A

## MISSTATEMENT OF AGE OR OTHER FACTS

If Your age or any other fact was misstated, Canada Life will use the correct facts to determine whether You are Insured and if so, for what amount and duration.

## ERRORS

You must be properly Insured under the Policy. An error or omission by the Plan Administrator or the Claims Administrator will not cause You to become Insured. An error or omission by the Plan Administrator or the Claims Administrator will not cancel Insurance that should continue nor continue Insurance that should end. The requirements of the Policy must be properly met for any change in the amount of Your Insurance to take effect.

## AGENCY

The Employer and any administrator appointed by the Employer are not agents of Canada Life for any purpose. Canada Life is not liable for any of their acts or omissions.

## CHANGES TO POLICY

This policy may be amended at any time by written agreement between the Policyholder and Canada Life without the consent of or notice to any other individual. Any amendment to this policy must be in writing and be attached to it. The amendment must bear the signature or a reproduction of the signature of one or both of the President or Secretary of Canada Life.

If a person who is insured is not Actively at Work on the Effective Date of the amendment, the effective date with respect to that person will be on the date that he is again Actively at Work. However, if the amendment reduced the amount of insurance to which the person is entitled, the effective date will be the effective date of the amendment.

63

000080

EXHIBIT A

It is understood that, if this policy is amended during a person's continuous period of Disability, the amendment will have no effect on the amount of his Insurance during that same continuous period of Disability.

## ENFORCEMENT OF POLICY TERMS

If at any time Canada Life does not enforce a provision of the Policy, Canada Life still retains its right to enforce that provision at its option after providing notice.

64

000081

EXHIBIT A

## LEGAL ACTIONS

You may not begin a legal action until 60 days after You have given Canada Life written proof of claim. You may not begin a legal action more than 36 months after giving the proof of claim. If these time limits for legal actions are shorter than that required by the law of the Applicable Jurisdiction, the time limits will be extended to the minimum requirements of that law.

## EFFECT ON WORKERS' COMPENSATION

The coverage provided by the Policy is not a substitute for coverage under a workers' compensation or state disability income benefit law and does not relieve the Employer of any obligation to provide such coverage.

GDC97-45

65

000082          EXHIBIT A

## SUMMARY PLAN DESCRIPTION INFORMATION

1.  The Name of the Plan is Group Long Term Disability Plan.

2.  The Name and Address of the Policyholder is:

    Townsend and Townsend and Crew LLP
    Two Embarcadero Center
    Eighth Floor
    San Francisco, CA  94111-3834

3.  The Employer Identification Number is 94-1222424.

4.  The Plan Number is 501.

5.  The type of Plan is Group Long Term Disability Benefit.

6.  The type of Administration is Canada Life Administered.

Benefits under this plan are provided through insurance in accordance with the terms and conditions of the group contract issued by the Claims Administrator who is The Canada Life Assurance Company, Atlanta, Georgia 30348.

You must be eligible in order to be entitled to benefits under the plan. The eligibility requirement of the plan and the benefits You are insured for are explained in detail in the General Definitions portion of this booklet.

7.  The Name, Address and phone number of the Plan Administrator is:

    Townsend and Townsend and Crew LLP
    Two Embarcadero Center
    Eighth Floor
    San Francisco, CA  94111-3834
    (415) 576-0200

66

000083                     EXHIBIT  A

9.  The Agent for Service of Legal process on the Policyholder is:

Townsend and Townsend and Crew LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA  94111-3834

The Plan Administrator is responsible for the administration of the plan and is designated agent for the service of legal process for the plan.  Functions performed by the Plan Administrator include: the receipt and deposit of any required contributions, maintenance of records of plan participants, authorization and payment of plan administrative expenses, selection of insurance consultants, selection of the insurance carrier, and the determination of eligibility of individual claimants for receipt of benefits.

9.  The source of contribution to the Plan is the Employer.

10. The Plan Year begins on August 1st.

11. This Plan is not maintained pursuant to one or more collective bargaining agreements.

You must continue to be a member of an eligible class and continue to make any required contributions in order to remain insured.  The events which will cause Your insurance to terminate and the circumstances under which benefits after termination are payable are described in this booklet.

When You have a claim, Your Human Resources Office will assist You and provide the claim forms needed to file for benefits.  To avoid loss of benefits due to late filing You should take care to file Your claim within the required time period.  Canada Life authorizes and makes payment of benefits.  If a claim is not paid in full, Canada Life will furnish notice which will specify the reason or describe the additional information required to perfect the claim.  If any claim for benefits under the Plan is denied, You will be given the reason for denial in writing usually within 90 days after receipt of the claim by

68

EXHIBIT  A

the Plan or within 180 days under special circumstances requiring a delay in processing the claim. If such extension is required, you will be given written notice of the extension prior to the initial 90 day period. This notice of extension shall state the special circumstances that require the extension and the date by which a final decision will be made.

69

EXHIBIT A

You, or a person on your behalf, may ask for a review of the denied claim in writing within 60 days of receipt of the denial notice. This written request for review should state the reasons why you feel your claim should not have been denied. It should include any additional documents which you feel support your claim. You may also ask additional questions or make comments and you may review pertinent documents. In normal cases, you will receive the final decision within 60 days of the date your request for review is received. In special cases requiring a delay, you will receive notice of the final decision no later than 120 days after your request for review is received.

The plan of insurance will terminate at the earliest occurrence of the following events:

1. When the Policyholder delivers or mails to Canada Life a written notice requesting termination; or

2. 31 days following the Policyholder's failure to make a premium payment; or

3. Canada Life elects not to renew the contract.

GDC97-46

70

000086    EXHIBIT A

### STATEMENT OF ERISA RIGHTS
(as required by Federal law and regulation)

As a participant in this Group Plan, You are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974. ERISA provides that all plan participants shall be entitled to:

1.  Examine, without charge, at the Plan Administrator's office and at other locations (work sites and union halls), all plan documents, including insurance contracts and copies of all documents filed by the plan with the U.S. Department of Labor, such as annual reports and plan descriptions.

2.  Obtain copies of all plan documents and other plan information upon written request to the plan administrator. The administrator may make a reasonable charge for the copies.

3.  Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary financial report.

4.  File suit in a federal court, if any materials requested are not received within 30 days of the participant's request, unless the materials were not sent because of matters beyond the control of the administrator. For violations that occur after July 29, 1997, the court may require the plan administrator to pay up to $110.00 for each day's delay until the materials are received. For violations that occurred on or before July 29, 1997, the court may require the plan administrator to pay up to $100.00 for each day's delay until the materials are received.

In addition to creating rights for plan participants, ERISA imposes obligations upon the persons who are responsible for the operation of the employee benefit plan. These persons are referred to as

71

000087        EXHIBIT  A

"fiduciaries" in the law. Fiduciaries must act solely in the interest of the plan participants and they must exercise prudence in the performance of their plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused the plan.

Your employer may not fire You or discriminate against You to prevent You from obtaining a welfare benefit or exercising Your rights under ERISA.

72

EXHIBIT A

If You are improperly denied a welfare benefit in full or in part, You have a right to file suit in a federal or a state court. If plan fiduciaries are misusing the plan's money, You have a right to file suit in a federal court or request assistance from the U.S. Department of Labor. If You are successful in Your lawsuit, the court may, if it so decides, require the other party to pay Your legal costs, including attorney's fees.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

GDC97-47

73

000089    EXHIBIT A

# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA

FIDELIA SUAREZ,

E-Filing

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

CANADA LIFE ASSURANCE COMPANY;
TOWNSEND AND TOWNSEND AND CREW
LLP GROUP LONG TERM DISABILITY PLAN;

**CV 08      1102**

**MMC**

TO: (Name and address of defendant)

*Canada Life Assurance company*
*8515 East Orchard rd*
*Greenwood Village, CO 80111*
*Townsend & Townsend and crew llp group long term disability plan*

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Frank N. Darras
SHERNOFF BIDART & DARRAS, LLP
3257 East Guasti Road, Suite 300
Ontario, CA 91761

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking

CLERK

DATE 2/25/08

(BY) DEPUTY CLERK

MARY ANN BUCKLEY

ORIGINAL

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |

| Name of SERVER | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐    Served Personally upon the Defendant. Place where served:

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐    Returned unexecuted:

☐    Other *(specify):*

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
　　　　　　　　　　 *Date*                                                    *Signature of Server*

　　　　　　　　　　　　　　　　　　　　　　　　　　　 _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　 *Address of Server*

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

✎ JS 44  (Rev. 12/07) (cand rev 1-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

FIDELIA SUAREZ,

### DEFENDANTS

CANADA LIFE ASSURANCE COMPANY; TOWNSEND AND TOWNSEND AND CREW LLP GROUP LONG TERM DISABILITY PLAN;

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Frank N. Darras        (909) 390-3770

SHERNOFF BIDART & DARRAS, LLP

3257 East Guasti Road, Suite 300

Ontario, CA 91761

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☒ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities — | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities — | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§1331, 1337 & 29 U.S.C.§1132(a), (e), (f) & (g), of the Employee Retirement Income Security Act
Brief description of cause:
complaint for benefits under an employee benefit plan

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND        ☐ SAN JOSE

DATE February 20, 2008

SIGNATURE OF ATTORNEY OF RECORD  FRANK N. DARRAS

American LegalNet, Inc.
www.FormsWorkflow.com



JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be placed. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity.         Example:        U.S. Civil Statute: 47 USC 553
                                                Brief Description: Unauthorized reception of cable service

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   Related Cases. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

American LegalNet, Inc.
www.FormsWorkflow.com